IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| FRANK GLASKER INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 05-1159-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MULTNOMAH COUNTY HEALTH SERVICE DEPARTMENT; MULTNOMAH COUNTY INVERNESS JAIL; JAMES BANE, M.D., and JOHN and JANE DOE(S) 1-25 in their official capacities, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

      Frank Glasker Ingram
      475 N.W. Glisan Street
      Portland, Oregon  97204
and
      8 N.W. Eighth Avenue
      Portland, Oregon  97209

           Pro Se Plaintiff

Page 1 - OPINION AND ORDER

Agnes Sowle
County Attorney
for Multnomah County
Susan M. Dunaway
Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon  97214

      Attorneys for Defendant

KING, Judge:

Plaintiff Frank Glasker Ingram, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against the Multnomah County Health Service Department, Multnomah County Inverness Jail, James Bane, M.D., and John and Jane Does, alleging that his rights were violated by the failure of the defendants to provide adequate medical care.  Before the court is defendants' motion for summary judgment (#52), and plaintiff's motions which have been construed as cross-motions for summary judgment (#72, 73).[1]

## FACTS

The following facts are taken from the prison records submitted by plaintiff and by defendants, as well as the affidavit of Dr. Bane, the Medical Director for the Multnomah County Health Department.

Plaintiff was incarcerated in Multnomah County jail from February 19 to June 15, 2004, from June 18 to June 21, 2004, from July 3 to July 6, 2004, and from July 22 to August 12, 2004.

---

[1] Since I previously construed plaintiff's submissions as cross-motions for summary judgment, I decline to adopt defendants' argument that the motions should be denied on the basis that they were not filed within the dispositive motions deadline and failed to include a Concise Statement of Material Facts.

Page 2 - OPINION AND ORDER

Plaintiff asserts that he first complained of right shoulder pain in March 2004. He subsequently submitted a Medical Request Form, on April 6, 2004, complaining of "excruciating" pain in his right shoulder that was so bad he must "fight back tears." Pl.'s Ex. 1. On April 7, 2004, a nurse prescribed Vicodin and an arm sling. The nurse reported in plaintiff's chart that plaintiff had rotator cuff surgery in 1999. Pl.'s Ex. 2.

On April 8, 2004, plaintiff was seen by a nurse and an orthopedic physician's assistant, who prescribed Vicodin and Naprosyn, and scheduled x-rays. Defendant reported that he had been lifting stacks of chairs, up to 8, in the dorm. The physician's assistant indicated that there was degeneration and spurring in the shoulder. The physician's assistant recommended cortisone injections for the shoulder, but plaintiff was reluctant to pursue that form of therapy.

In an April 14, 2004 report, a doctor at OHSU summarized his findings after reviewing the x-rays, noting that plaintiff had "[n]o acute fracture or evidence of dislocation in the right shoulder and internal and external views. There are degenerative changes especially at the acromioclavicular joint." Defs.' Ex. 2 at 4.

Plaintiff reports that he was examined by an orthopedic specialist who viewed and read the x-rays. According to plaintiff, the specialist informed plaintiff, "You need surgery to repair the damage to your right shoulder." Amended Complaint at 3. According to plaintiff, the specialist offered plaintiff a cortisone injection, suggesting that it would give temporary relief, and informed plaintiff that surgery was the only permanent remedy.

On April 19, 2004, plaintiff met with a nurse practitioner, whose notes of that meeting are as follows:

> Right shoulder still painful, gets tingling sensation down fingers. Saw Ortho, thinks the Ortho Doc misdiagnosed him. Told him he needed surgery, down the road, but Mult Co does not have money to pay for it, needed to RTC to discuss cortisone shots. Wants Mult Co to send him for surgery and take care of the expenses. When he had his rotator cuff surgery in 1999, it took an arthogram to identify the tear.

Defs.' Ex. 2 at 5.[2] The nurse practitioner prescribed Naprosyn and Vicodin, and arranged an appointment to meet with the orthopedic physician's assistant to "discuss cortisone shots and possible surgery eval." Id.

On April 22, 2004, the orthopedic physician's assistant met with plaintiff. His notes reflect that plaintiff

> wants surg on shoulder–feels he did this on jail time and county should pay for it. Agreed to discuss case with Dr. Bane–adamant about continuing Vicodin as pain is intolerable [without] it. Feels injection not worth a try as it doesn't cure problem. Naprosyn no help.

Defs.' Ex. 2 at 6.

Dr. Bane gave written instructions to plaintiff on April 29, 2004, explaining,

> I have reviewed your chart and details of your shoulder pain. You appear to have an acute exacerbation of a previous problem. I urge you [to] take the treatment offered with medication and local injections. Surgical consultation is not approved but I will re-evaluate your situation in 60 days.

Defs.' Ex. 2 at 8.

Plaintiff requested a refill of his Vicodin prescription, which was refused on May 19, 2004. On May 20, 2004, Dr. Bane indicated that plaintiff was "[r]eluctant to have cortisone

---

[2]Unless plaintiff's reference to the orthopedic specialist is the orthopedic physician's assistant, neither plaintiff nor defendants have provided any of the specialist's chart notes. The physician assistant does not indicate anywhere in his notes that he thought surgery was the appropriate treatment.

Page 4 - OPINION AND ORDER

injections–afraid it won't work or might cause more pain. Really only interested in Vicodin and surgery." Defs.' Ex. 2 at 10. Dr. Bane prescribed a refill of Vicodin.

Again, on May 24, 2004, plaintiff met with the nurse practitioner, who encouraged plaintiff to try cortisone shots. Plaintiff reported he did not know anyone who obtained a good outcome as a result of such shots.

Plaintiff reports that on June 25, 2004, a time when he was not in a Multnomah County jail, he sought treatment at a VA hospital for his shoulder pain, and obtained Vicodin. Back in custody, on August 3, 2004 he submitted a Medical Request Form. In that form, he reported that the orthopedic specialist he had seen earlier did offer plaintiff a cortisone shot, but that he told plaintiff surgery was the only remedy to repair the shoulder. Plaintiff stated that he was scheduled for surgery at a VA hospital on August 18, 2004, and that he wrote a letter asking the VA to give that information to the medical providers at the jail.

On August 9, 2004, Dr. Bane completed a Client Instruction form that asked plaintiff to complete a Release of Information to allow the medical providers to get information from the VA.[3]

On August 11, 2004, Dr. Bane met with plaintiff and noted that plaintiff "limited what records" the VA may send to him. Dr. Bane also noted that plaintiff "understands that no elective orthopedic surgery is done here and he can not access the VA system while in jail." Defs.' Ex. 2 at 18. According to plaintiff, while Dr. Bane stated that the surgery was elective, he

---

[3]Plaintiff disputes this fact but provides no evidence or argument refuting defendants' exhibit 2 at 17, which is the Client Instructions containing this statement.

Page 5 - OPINION AND ORDER

also informed plaintiff that Multnomah County does not have funds and encouraged plaintiff to get on the Oregon Health Plan when he is released.

Plaintiff was sent to Oregon Department of Corrections ("DOC") on August 12, 2004, and Dr. Bane never saw plaintiff again. Dr. Bane never received medical records from the VA because they were sent to plaintiff's new location. During the DOC's intake medical assessment, plaintiff told medical personnel that he was scheduled for surgery at the VA Hospital on August 19, 2004. None of the records received from the VA show that plaintiff was ever scheduled for surgery.[4]

Between September 29, 2004 and May 19, 2005, DOC medical personnel treated plaintiff's shoulder. On January 5, 2005, the DOC doctors determined that an MRI was not necessary. In May, 2005, plaintiff received local cortisone shots for his shoulder pain. Plaintiff claims he had no choice other than to take cortisone injections for temporary help.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

---

[4] Plaintiff disputes this fact, but offers no evidence or argument refuting defendants' exhibit 4, the Veterans' Administration Records.

Page 6 - OPINION AND ORDER

evidence is viewed in the light most favorable to the nonmoving party. Robi v. Reed, 173 F.3d 736, 739 (9th Cir.), cert. denied, 528 U.S. 375 (1999).

## DISCUSSION

I.      Plaintiff's Claim Against Multnomah County

Plaintiff brings claims against Multnomah County Health Service Department and Multnomah County Inverness Jail. Multnomah County Inverness Jail is operated by the Multnomah County Sheriff's Office, which is a department of Multnomah County. Similarly, Multnomah County Corrections Health is a division of the Multnomah County Health Department, which is also a department of Multnomah County. Therefore, the proper defendant is Multnomah County, which is a municipal entity.

A plaintiff may bring a claim against a municipality as a "person" under section 1983. Monell v. Department of Social Svcs. of New York City, 436 U.S. 658 (1978). A plaintiff may establish local governmental liability by demonstrating that: (1) a governmental employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity;" (2) the individual who committed the constitutional tort was an official with "'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992), cert denied, 510 U.S. 932 (1993) (internal citations omitted).

Defendants assert that Dr. Bane has no final policy-making authority. Dr. Bane is the Medical Director for the jails, but Gayle Burrow, as the Director of Corrections Health for Multnomah County, is the final policymaker. Plaintiff offers no evidence to dispute defendants' assertion that Dr. Bane had no final policy-making authority. As a result, Multnomah County can only be liable if it "(1) had a policy that posed a substantial risk of serious harm to [plaintiff]; and (2) kn[ew] that its policy posed this risk." Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1188 (9th Cir. 2002).

Plaintiff challenges Multnomah County's refusal to pay for shoulder surgery due to budgetary reasons, claiming that this constitutes deliberate indifference to his medical needs.

In response to plaintiff's allegations, Dr. Bane explains,

> [D]ue to budget constraints, Multnomah County does not offer services for elective surgery. Elective surgery is surgery that is not related to a serious medical concern, e.g., fracture, heart condition, cancer, injuries related to diabetes, or without which the inmate would become seriously ill and/or disabled or without which an inmate's pain could not be alleviate[d] by alternative medical treatments.

Bane Aff. ¶ 10.

Burrow testifies that,

> As a general practice, elective orthopedic surgery is not offered at Multnomah County jails for conditions that do not constitute serious medical conditions. Instead, as in this case, alternative treatments to relieve pain and discomfort are offered first, *e.g.*, pain medications, anti-inflammatory drugs, cortisone shots. Due to budget constraints, the County must first offer the least expensive treatment to take care of medical conditions and pain and discomfort before offering surgery.

Burrow Aff. ¶15.  Burrow also testifies, "If an inmate's condition changed and/or the inmate's pain and discomfort were not relieved by treatments other than surgery, then surgery would be considered."  Id. at ¶ 16.

Contrary to plaintiff's assertion, it is not improper for a prison official to "consider the costs and benefits of treatment in determining whether to authorize . . . surgery" so long as the prison official considers each case "on its own merits."  Delker v. Maass, 843 F. Supp. 1300, 1400 (D. Or. 1994).  For example, one factor to consider is the length of the prison sentence.

Here, plaintiff does not appear to dispute that the surgery was properly characterized as "elective."  Furthermore, although he contends in his affidavit that he complained of "excruciating pain from end of March 2004 up until my release on June 15, 2004," he admits Vicodin did "alleviate the pain."  Pl.'s Counter-Claim for Mot. for Summ. J. at 7.  When he requested pain medication, he received it, and he was repeatedly offered cortisone injections to treat his shoulder condition.  Finally, plaintiff was not in custody for a lengthy period of time.  He first complained about the shoulder pain in March of 2004, and he was in and out of custody in June and July, and formally transferred to DOC in August of 2004.

In short, plaintiff has not alleged or submitted any evidence to show that Multnomah County has any longstanding policy or custom that was deliberately indifferent to plaintiff's medical needs.  In addition, plaintiff has not shown that any decision related to plaintiff's shoulder was made or ratified by an official with final policy-making authority.  For these reasons, Multnomah County is entitled to summary judgment dismissing all claims against it.

II. <u>Plaintiff's Claim Against Dr. Bane</u>

Although defendants contend that plaintiff does not state a claim against Dr. Bane in his individual capacity, a "section 1983 suit against state actors necessarily implies a suit against the defendants in their personal capacities." <u>Cerrato v. San Francisco Community College Dist.</u>, 26 F.3d 968, 973 n. 16 (9th Cir. 1994). Accordingly, the question is whether Dr. Bane deprived plaintiff of his Eighth Amendment right to medical care.

In the context of a claim for failure to provide medical care in violation of the Eighth Amendment, plaintiff must satisfy both an objective and subjective inquiry. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132-33 (9th Cir. 2000). Plaintiff must first establish a "serious medical need." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). A serious medical need is the kind of injury that "a reasonable doctor or patient would find important and worthy of comment or treatment; . . . that significantly affects an individual's daily activities; or [causes] chronic and substantial pain." <u>Lopez</u>, 203 F.3d at 1131. The subjective inquiry requires a showing that correctional officials acted with deliberate indifference to this serious medical need. <u>Id.</u> "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). A difference of opinion as to the specific course of treatment does not establish deliberate indifference. <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

Assuming without deciding that plaintiff's shoulder injury constitutes a serious medical need, plaintiff produces no evidence that Dr. Bane purposefully acted or failed to respond to

Page 10 - OPINION AND ORDER

plaintiff's medical need. Instead, plaintiff's evidence shows that plaintiff repeatedly asked for treatment and that he received it.

Plaintiff received pain medication the day after he complained about his pain, and continued to receive medication every time he requested it. He consistently rejected the offered treatment of cortisone injections. Dr. Bane ordered an x-ray of the shoulder, finding degenerative changes rather than a new injury. Although plaintiff alleges that the orthopedic specialist told him he needed surgery to repair the shoulder, he provides no record corroborating this statement. The nurse's record reflects that plaintiff told the nurse the specialist said plaintiff needed surgery "down the road" and that plaintiff disagreed with that advice. Defs.' Ex. 2 at 5. In any event, Dr. Bane determined that surgery was not necessary at that time, provided pain medication and anti-inflammatory medication, encouraged cortisone injections, and agreed to re-evaluate plaintiff's situation in 60 days. No VA medical records show that a doctor scheduled surgery on plaintiff's shoulder and, when plaintiff was placed in DOC custody, the DOC doctors agreed with Dr. Bane's treatment recommendations.

Nevertheless, viewing the facts in the light most favorable to plaintiff, as I am required to do, and accepting plaintiff's statement that an orthopedic specialist recommended surgery as the permanent remedy, in addition to cortisone injections, I find such advice does not render Dr. Bane's actions deliberately indifferent. Plaintiff may not have agreed with Dr. Bane's decision that cortisone injections was the appropriate way to treat the injury, but this does not amount to deliberate indifference on the part of Dr. Bane. <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (difference of opinion fails to show deliberate indifference as a matter of law). Furthermore, plaintiff has presented no evidence that his injury was exacerbated by any failure to

Page 11 - OPINION AND ORDER

provide surgery. See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by* WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (1997). In short, plaintiff identifies no facts demonstrating that Dr. Bane caused "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 103.[5] Dr. Bane is entitled to summary judgment dismissing all claims against him.

III.   Plaintiff's Claim Against John and Jane Doe Defendants

Multnomah County seeks summary judgment on all claims brought against the Doe defendants. Plaintiff filed his Amended Complaint in October of 2005, but has not yet identified the Doe defendants. Plaintiff states Burrow is one of the Doe defendants, and that Ijeoma Nwerem, a nurse practitioner for Corrections Health, and a "Ms. Kelly" are the others.

Federal Rule of Civil Procedure 4(m) requires that plaintiff serve a defendant within 120 days after filing the complaint, and if this is not done the court "must dismiss the action without prejudice against that defendant or order that service be effected within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

---

[5] A repeated theme throughout plaintiff's briefing is that Dr. Bane caused plaintiff's drug habit by treating plaintiff's injury with Vicodin rather than surgery. Plaintiff failed to include such a claim in his Amended Complaint. Plaintiff is required to seek leave to amend his Complaint before adding new claims, and follow the rules for doing so. See Fed. R. Civ. P. 15(a); see also Pickern v. Pier I Imports (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (plaintiff may not add new claims in response to motion for summary judgment). Accordingly, without suggesting there is any merit to plaintiff's assertion, he must raise this new claim in a separate action if he desires to litigate the issue.

Page 12 - OPINION AND ORDER

Plaintiff has failed to identify the John Does and therefore has failed to serve them. Discovery has closed and plaintiff never substituted the names of real persons for his John Doe defendants. Plaintiff offers no good cause why the court should extend the time for service.[6]

Accordingly, all claims against the Doe defendants are dismissed.

## CONCLUSION

Defendants' Motion for Summary Judgment (#52) is granted, and plaintiff's motions which have been construed as Cross-Motions for Summary Judgment (#72, 73) are denied. This case is dismissed.

IT IS SO ORDERED.

Dated this     30th     day of January, 2008.

　　　　　　　　　　　　　　　　 /s/ Garr M. King
　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　United States District Judge

---

[6]In addition, I note plaintiff has offered no evidence or argument that either Burrow or Nwerem were deliberately indifferent to plaintiff's medical needs. Indeed, plaintiff offers no evidence Burrow participated in, or knew of, plaintiff's medical treatment. Finally, I cannot determine from the medical records or from plaintiff's briefing who "Ms. Kelly" is.

Page 13 - OPINION AND ORDER